# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| DWAYNE KELLY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:13-CV-1101 |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This matter is before the Court on a petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody, filed by Dwayne Kelly, a *pro se* prisoner, on October 17, 2013. (DE #1.) For the reasons set forth below, the petition (DE #1) is **DENIED**, and the court **DENIES** the petitioner a certificate of appealability.

BACKGROUND

Kelly is serving a 65-year sentence for a murder committed in Grant County. (DE #1 at 1.) In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Kelly's burden to rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts underlying Kelly's conviction as follows:

On March 4, 2005, Kelly went to Heather Jones's house in Marion, Indiana, looking for Alonzo Coleman. Steffan Bobson and several friends were already at Jones's house. When Kelly entered the house, Bobson was sleeping on the couch with a gun in his lap. Kelly took the gun from Bobson's lap and asked who owned the gun. One of Bobson's friends testified that Kelly cocked the gun and pointed it at his legs. Despite being urged by several of the people present to return the gun to Bobson, Kelly left with the gun. Kelly testified that he unloaded the gun and hid it after he left Jones's house.

The following day, Kelly went to Antoinette Sanders's house looking for Coleman. While Kelly was at Sanders's house, Bobson arrived. Bobson yelled at Kelly to return his gun and acted as if he was going to hit Kelly. Kelly jumped, causing onlookers to laugh. Kelly then left and retrieved Bobson's gun from its hiding place. Kelly told his friends that he was going back to the house to "deal with him," or to "settle the problem[.]" Not long after he first left Sanders's house, Kelly returned and knocked on the door. When Bobson answered, Kelly said, "Let me holler at you." Bobson partially shut the door and walked away, but Kelly entered the house while holding the gun in his hand. Kelly raised the gun and pointed it at Bobson. Kelly and Bobson struggled over the gun. During the struggle, Bobson was shot and eventually died from a "loose contact gun shot wound" to the chest. Kelly testified that it was a "surprise" to him when the gun went off because he thought it was unloaded.

After the shooting, Kelly took the gun and walked away from the scene. He gave the coat he was wearing to a friend's nephew and told him to wash it. He borrowed a change of clothes and arranged a ride to Chicago with friends. He told one of his friends that "he didn't mean [ ] for it to happen like that, he meant . . . to put him in the wheelchair."

Kelly was eventually arrested and charged with murder. Kelly testified on his own behalf at his jury trial, admitting to much of the State's evidence, but claiming that he believed the gun was unloaded, that he did not have the gun in his hand when he entered Sanders's house, and that he does not know who pulled the trigger during the struggle for the gun.

*Kelly v. State*, No.72A05-0610-CR-590, slip op. at 2-3 (Ind. Ct.

2

App. Mar. 28, 2008) (internal citations omitted). The jury found Kelly guilty of murder. *Id.* at 3. The court sentenced him to an aggravated term of 65 years, based on his extensive criminal history and the fact that he was on probation at the time of the offense. *Id.* Kelly appealed, challenging the sufficiency of the evidence and arguing that the trial court erred in imposing his sentence. *Id.* at 2. The Indiana Court of Appeals affirmed. *Id.* at 11. Kelly did not seek transfer in the Indiana Supreme Court, nor did he seek review in the U.S. Supreme Court. (*See* DE #1 at 1.)

Kelly then filed a state petition for post-conviction relief alleging ineffective assistance of counsel on various grounds. *Kelly v. State*, No. 27A01-1212-PC-568 (Ind. Ct. App. Aug. 2, 2013). Following an evidentiary hearing at which Kelly was represented by counsel, the petition was denied. *Id.* at 3. Kelly appealed, raising three arguments: his counsel was ineffective in opening the door to prejudicial character evidence; his counsel was ineffective in failing to object to certain testimony about threats to two of the witnesses; and his counsel was ineffective in failing to raise an argument based on admission of the threat evidence on direct appeal. *Id.* at 4. The Court of Appeals affirmed the denial of post-conviction relief. *Id.* at 12. Kelly sought transfer raising the same claims (DE #8-11), but his petition was denied. (DE #8-6.) He did not seek review in the U.S. Supreme Court. (DE #1 at

3

2.)

Thereafter, Kelly filed a federal habeas petition raising the following claims: (1) his counsel was ineffective in opening the door to prejudicial character evidence and in failing to object to the threat evidence; and (2) his counsel was ineffective in failing to raise an argument based on admission of the threat evidence on direct appeal. (DE #1 at 3-4.)

DISCUSSION

Kelly's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet, and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011). To obtain relief, a petitioner must show that the state court's ruling was "so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Both of Kelly's claims are based on ineffective assistance of counsel. Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Richter*, 131 S. Ct. at 788. The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding; "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Furthermore, "counsel need not be perfect, indeed not even very good, to be constitutionally adequate." *McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted).

In assessing counsel's performance, the court must "evaluate

6

[counsel's] performance as a whole rather than focus on a single failing or oversight," *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, —U.S.—, 131 S. Ct. 733, 741 (2011). Counsel is given significant discretion to select a t rial strategy based on the information known to him at the time. *See Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011) ("So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel."); *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (observing that as long as counsel's reasons were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient.").

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt

might have been established if counsel had acted differently." *Richter*, 131 S. Ct. at 791. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. When the petitioner wanted counsel to raise an argument that itself had no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996). Where it is expedient to do so, the court may resolve an ineffective assistance claim solely on the prejudice prong, because if the petitioner cannot establish prejudice, there is no need to "grade" counsel's performance. *Strickland*, 466 U.S. at 697.

A claim of ineffective assistance of appellate counsel is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). On the deficiency prong, the petitioner must show that counsel failed to present a "significant and obvious" issue on appeal. *Id.* at 790. However, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise

8

modified on appeal." *Howard*, 225 F.3d at 790.

   A. <u>Ineffective Assistance of Trial Counsel</u>

   The record reflects that Kelly was represented by Grant County Public Defender C. Robert Rittman at trial and on appeal. (DE 10, State Court Record, Post-Conviction Hearing ("PCR") Transcript ("Tr.") at 6.) Kelly first claims that Rittman was deficient in opening the door to improper character evidence by questioning a witness about Kelly's reputation for peacefulness. (DE #1 at 3.) In rejecting this claim on post-conviction review, the Indiana Court of Appeals properly identified *Strickland* as the governing standard, and concluded that Kelly did not make the requisite showing of prejudice. *Kelly*, No. 27A01-1212-PC-568, slip op. at 4. Based on the record, the state court's resolution of this claim was not objectively unreasonable.

   During the presentation of the defense's evidence at trial, Rittman asked witness Gina Wilcox about Kelly's "reputation for peacefulness." *Id.* at 5. She responded "[h]e's really nice to me" and stated she had "[n]ever" known Kelly to be violent. *Id.* During cross-examination, the prosecutor asked her if she knew "anything" about Kelly battering a girlfriend in the past, and whether she knew if Kelly had "been arrested and conviction of multiple batteries on Jackie Sanders." *Id.* at 6. Wilcox responded "No, sir" and stated that Kelly never threatened or attacked her. *Id.*

   Kelly then testified, admitting that he earned his income from

selling cocaine, that he carried a gun due to his drug-dealing activities, and that at the time he took Bobson's gun he was carrying his own gun and had another gun in his car. (DE #10, State Court Record, Trial Tr. at 645-51.) During his cross-examination, he acknowledged "criminal records for beating up [his] girlfriend" and past battery convictions. (*Id.* at 683.) Rittman objected, and during a sidebar, he successfully argued that the prosecutor should not be permitted to inquire into the specifics of these incidents. (*Id.*) Kelly now argues that Rittman was deficient, and that his deficient performance prejudiced him in connection with this testimony.

As outlined above, this was not an easy case to defend. Several witnesses saw Kelly take Bobson's gun; heard him say he was going back to the house to "deal with" Bobson; heard him tell Bobson "you want me to put somethin' in ya" and push his way in the house as Bobson was trying to close the door; saw him take out the gun from his waistband and point it at Bobson's head; and saw him wrestling with Bobson over the gun. There was also evidence that he fled to Chicago after the shooting, disposed of his clothing, and told a friend he only meant to put Bobson "in a wheelchair." Faced with this evidence, counsel decided to adopt a strategy under which the defense admitted to certain matters even though they "shed some bad light" on Kelly, in hopes that the jury would believe he was being truthful when he testified that he did not

10

intend to kill Bobson. *Kelly*, No. 27A01-1212-PC-568, slip op. at 8. In essence, counsel's goal was to try to obtain a conviction on some lesser offense than murder. (DE #10, State Court Record, PCR Tr. at 6, 10-11.) This strategy was not without risks, but given the damning evidence against Kelly, counsel's strategy was not "so far off the wall" as to constitute deficient performance. *See Lathrop*, 634 F.3d at 937. Indeed, admitting to certain bad behavior was necessary given Kelly's decision to testify, since he could permissibly be questioned about his criminal record and other matters bearing on his credibility.[1]

The trial record reflects that counsel vigorously pursued the defense theory he selected, making arguments and eliciting testimony from witnesses in support of the theory that the shooting was accidental. Although the defense strategy ultimately proved unsuccessful, this can be attributed to the strength of the evidence inculpating Kelly rather than an error by counsel. The state's evidence included the testimony of eyewitnesses about Kelly's aggressive actions and threats to Bobson, including his pointing a gun at Bobson's head, his flight from the state after the shooting, and his "wheelchair" comment. Kelly's own testimony that the shooting was accidental was thoroughly impeached by the

---

[1] The record shows that Kelly had an extensive criminal record dating back to when he was 17 years old, including six prior felony convictions, three misdemeanor convictions, and two probation violations. (DE #10, State Court Record, Appellant's Appx. at 6-8.) He was also on probation at the time he committed this offense. (*Id.* at 6.)

11

prosecutor.  The jury also heard evidence of his criminal record for offenses other than the battery convictions, and also learned that he was on probation at the time of the offense.  Based on the record, Kelly has not demonstrated that in the absence of an error by counsel in connection with Wilcox's testimony, the result of the proceeding likely would have been different.  Thus, the state court's resolution of this claim was not objectively unreasonable.

In a related vein, Kelly argues that counsel was deficient because he failed to properly object to certain testimony regarding threats made to two witnesses, Latea Ford and Antoinette Sanders. (DE #1 at 3.)  At trial, Ford, who was present for the confrontation before the shooting, was asked on direct if she had received any threats related to her testimony. She replied that she had not, but stated that "people" had asked her if she was "goin' to Court" and what she would "say in Court."  (DE 10, State Court Record, Trial Tr. at 313.)  Ford testified that a man named Jay came to her house and "he just axed [sic] me, was I goin' to Court and said that Dwayne wanted me——"  (*Id.*)  At this point, Kelly's counsel objected, but the trial court overruled the objection. (*Id.*)  The state then asked Ford what she had said to Jay.  (*Id.*) Defense counsel objected again, but his objection was overruled. (*Id.* at 314.)  Ford testified that she told Jay not to return to her house and that she did not want to talk to him.  (*Id.*)  That concluded the state's questioning on the matter.  (*Id.*)

12

During the testimony of Sanders, she testified that she lived with her children at the home where the shooting occurred, but was not at the home at the time of the shooting. (*Id.* at 283, 287–88.) The prosecutor asked her why she left town a few days after the shooting. (*Id.* at 293.) Kelly's counsel objected, but the trial court overruled the objection and allowed Sanders to answer. (*Id.*) She responded, "I was threatened that if I came to Court or if I told what happened that me and my kids, somethin' was going to happen to me and my kids, so I left and it was just like embarrasin' to me that this happened in my house, so I left." (*Id.*) There were no further questions on this matter. (*Id.*)

Under Indiana law, evidence of a threat to a witness by a third party is admissible, provided the state establishes a proper foundation that the third party made the threats "with the defendant's knowledge or authorization." *Kimble v. State*, 451 N.E.2d 302, 306 (Ind. 1983). As noted above, Kelly's counsel did raise objections to the testimony of Ford and Sanders, but his objections were overruled. Although Kelly appears to believe counsel should have done more to keep this testimony out, he presented nothing in the post-conviction proceedings to suggest that the trial court would have sustained some other type of objection to this evidence.

Furthermore, the Indiana Court of Appeals concluded that Kelly failed to establish prejudice in connection with this testimony in

light of the other evidence of his guilt. *Kelly*, No. 27A01-1212-PC-568, slip op. at 8-11. This determination was not unreasonable. As the state court pointed out, the evidence about the threats was quite limited and brief, and one of the witnesses expressly denied having been threatened. The other witness stated that she decided to leave town, in essence, because she was embarrassed this had occurred in her home. On the other hand, the evidence of Kelly's guilt was substantial. This included Kelly's own admissions about his drug activities and his habit of carrying firearms, the eyewitness testimony that Kelly pointed a firearm at Bobson's head, and the inculpatory statement he made to a friend after the shooting. Based on the record, Kelly has not established that counsel was deficient, or that in the absence of an error by counsel in connection with this testimony, there is a substantial likelihood that the proceeding would have had a different outcome. *Richter*, 131 S. Ct. at 792. The state court's resolution of this claim was not objectively unreasonable.

Although unclear, Kelly may also be claiming that counsel's overall performance was deficient and that he essentially abandoned his role as Kelly's advocate. The record belies any such claim. Instead, the record reflects that trial counsel was well versed in the facts and advocated vigorously on Kelly's behalf throughout the trial proceedings. He argued a motion *in limine*, conducted extensive *voir dire* questioning of prospective jurors, made a

lengthy opening statement, cross-examined the state's witnesses (including eliciting testimony that certain witnesses had prior criminal records or had lied to police in the past), raised numerous objections, argued in closing that Kelly's conduct was merely reckless, and argued for leniency at sentencing. (DE #10, State Court Record, Trial Tr. Vol. I-IV.)

In short, Kelly has not established that counsel failed to serve in his role as an advocate, or that counsel's overall performance fell below the minimum standard required by *Strickland*. Furthermore, given the substantial evidence in the record of his guilt, as well as the evidence impugning his credibility as a witness, he has not made the necessary showing of prejudice. Based on the record, the state court's resolution of Kelly's claims pertaining to trial counsel's performance did not constitute an unreasonable application of *Strickland*. Accordingly, these claims are denied.

B.  Ineffective Assistance of Appellate Counsel

Kelly also claims that counsel was ineffective in failing to raise an argument on direct appeal regarding admission of the threat evidence. (DE #1 at 3.) In rejecting this claim on post-conviction review, the Indiana Court of Appeals Petitioner properly identified *Strickland* as the governing standard. *Kelly*, No. 02A04-1107-PC-398, slip op. at 4. The court concluded that Kelly failed to establish deficient performance or prejudice in connection with

15

this claim.  *Id.* at 11-12.  Based on the record, the state court's resolution of the claim was not objectively unreasonable.

Under *Strickland*, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288.  Here, the record reflects that counsel filed an 18-page appellate brief on Kelly's behalf, raising two arguments and citing various state and federal cases. (DE #8-3.) One of the arguments challenged the sufficiency of the evidence on the issue of intent; if successful, this would have resulted in the murder conviction being vacated.  (*See id.*)  The other argument challenged Kelly's sentence, asserting error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  If successful, this argument would have resulted in a substantial reduction in Kelly's 65-year sentence.  The Indiana Court of Appeals found enough merit to these arguments to warrant an 11-page opinion analyzing the facts and applicable law. *Kelly*, No. 27A05-0610-CR-590.  Indeed, the court agreed with counsel that the trial court had committed errors under *Apprendi* and *Blakely*, but ultimately found these errors harmless.  *Id.* at 8-11.

Kelly has not established that the argument regarding the threat evidence was significantly stronger than the arguments counsel chose to raise.  As recounted above, counsel objected to the threat testimony during trial, but his objections were

16

overruled by the trial court. Kelly has not provided any basis to conclude that further investigation or other action by counsel would have led to a different decision by the trial court regarding the admissibility of this evidence. Furthermore, the Indiana Court of Appeals considered this argument on post-conviction review, and concluded that Kelly was not prejudiced by the admission of the threat evidence. *Kelly*, No. 27A01-1212-PC-568, at 11. There is no indication Kelly's argument would have fared any better on direct appeal. Accordingly, Kelly has not made the necessary showing of prejudice. *See Howard*, 225 F.3d at 790; *Stone*, 86 F.3d at 717. Based on the record, the state court's resolution of this claim was not objectively unreasonable, and therefore the claim is denied.

Pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted). As is fully explained above, Kelly's claims are without merit under AEDPA standards. Nothing before the court suggests that jurists of

reason could debate the outcome of the petition or find a reason to encourage Kelly to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

CONCLUSION

For the reasons set forth above, the petition (DE #1) is **DENIED**, and the court **DENIES** the petitioner a certificate of appealability.

**DATED: July 1, 2014**             /s/ RUDY LOZANO, Judge
                                    **United States District Court**